DUVALL et ux. v. KANSAS CITY LIFE
INS. CO. et al.

No. 1754.

Court of Civil Appeals of Texas. Waco.

July 2, 1936.

Rehearing Denied Sept. 24, 1936.

W. V. Dunnam, of Waco, for appellants.

Hamilton, Lipscomb & Wood, of Dallas, for appellees.

GALLAGHER, Chief Justice.

This suit was instituted by appellants, W. H. Duvall and wife, Lela May Duvall, against appellees, Kansas City Life Insurance Company and one E. E. Clark, Jr. Appellants alleged that appellee Kansas City Life Insurance Company was a corporation, incorporated under the laws of the state of Missouri, and that E. E. Clark, Jr., resided in Dallas county. Appellants further alleged that on the 8th day of December, 1922, Realty Trust Company was a domestic corporation with its offices, domicile, and place of business in Dallas, Dallas county, Tex.; that on said date they executed and delivered to said Realty Trust Company their certain promissory notes or bonds, payable to it at its office in Dallas, Tex., as follows: One bond in the sum of $500, due January 1, 1928; one bond in the sum of $500, due January 1, 1929; one bond in the sum of $500, due January 1, 1930; one bond in the sum of $500, due January 1, 1931; and one bond in the sum of $15,000, due January 1, 1933; that all the same amounted in the aggregate to $17,000. Appellants further alleged that they issued and delivered to said corporation thirty-six notes or coupons representing the annual inter-

est on said several notes or bonds at the rate of 6 per cent. per annum, and that all said notes or bonds and interest notes or coupons obligated appellants to pay interest thereon after maturity at the rate of 10 per cent. per annum. Appellants further alleged that coincident with the execution of said notes and to secure the same, they executed and delivered to F. O. Ketcham, trustee for said Realty Trust Company, their certain deed of trust on a tract of land situated in Bosque county, Tex. The terms of said deed of trust, so far as relevant to the issues of law hereinafter discussed, will be recited in connection therewith. Appellants further alleged that coincident with the execution of said principal notes, interest coupons and deed of trust securing the same as aforesaid, and as additional consideration for the loan of $17,000 evidenced by said principal notes or bonds, they executed and delivered to said Realty Trust Company five additional notes in the aggregate sum of $1,630, two of which were for the sum of $340 each and due, respectively, January 1, 1924, and January 1, 1925, one of which was for the sum of $335 and due January 1, 1926; another for the sum of $315, due January 1, 1927; and the fifth or last for the sum of $300, due January 1, 1928. Each of said notes represented approximately 2 per cent. of the principal notes or bonds for the year immediately preceding its maturity, and provided for the payment of interest after maturity only at the rate of 10 per cent. per annum. All of said notes were paid by appellants. Appellants further alleged that coincident with the execution of said last-described series of notes, they executed and delivered to F. O. Ketcham, trustee for said Realty Trust Company, another or second deed of trust on said tract of land. The terms of said deed of trust, so far as relevant to the issues of law hereinafter discussed, will be recited in connection therewith. Appellants alleged in this connection that by the terms of said several instruments as aforesaid, said Realty Trust Company intended to exact and to require appellants to pay interest at a higher rate than 10 per cent. per annum on the amount of the loan evidenced thereby, and that said transaction was therefore usurious; that no interest could be lawfully collected thereon and that all sums paid as interest should be credited in discharge of the principal of said indebtedness. Appellants further alleged that appellee Kansas City Life Insurance Company then claimed to be the owner and holder of all the unpaid notes or bonds and certain unpaid coupons thereon; that it acquired the same with full knowledge that they were tainted with the vice of usury; and that the appellee, E. E. Clark, Jr., purporting to act as substitute trustee under said original deed of trust, had advertised the land described therein for sale and would, unless restrained, sell the same and apply the proceeds of such sale to the satisfaction of said unpaid notes and interest coupons according to the face and tenor thereof, notwithstanding appellants' right to have the aggregate amount thereof abated to the extent of all interest payments made by them. The court granted a temporary injunction restraining the sale of said land during the pendency of the suit.

Appellee filed a general denial and a cross-action in which it sought recovery on all unpaid principal notes or bonds and all unpaid interest coupons executed and delivered in connection therewith, together with 10 per cent. interest thereon from maturity, and a further 10 per cent. on the aggregate amount as attorney's fees.

The case was submitted on special issues, in response to which the jury found, in substance, that: (1) The Realty Trust Company made the loan contracts under consideration herein with the intention to charge and exact a rate of interest on the loan during some one year in excess of 10 per cent.; (2) the Realty Trust Company intended to fix a lien on the land described in said deeds of trust for, and require appellants to pay, such taxes as might thereafter be assessed against the notes by the city of Dallas, Dallas county, and the state of Texas, where said notes were payable; (3) appellee Kansas City Life Insurance Company took an assignment of the notes and deed of trust liens involved herein with knowledge of such intent with reference to the payment of taxes. Appellants filed a motion for judgment in their favor in accord with the findings so returned by the jury, which motion was overruled by the court. Appellee Kansas City Life Insurance Company filed a motion for judgment non obstante veredicto, which motion the court granted, and entered judgment that appellants take

nothing by their suit, and that appellee Kansas City Life Insurance Company recover from appellant W. H. Duvall the aggregate amount of principal, interest, and attorney's fees found by the court to be due, together with interest on such amount from December 3, 1934, until paid at the rate of 6 per cent. per annum.

### Opinion.

Appellants present various propositions in which they insist that the transaction under consideration in this case, as disclosed on the face of the several instruments evidencing the same, was, as a matter of legal construction, usurious; that such transaction, as disclosed on the face of such instruments, when considered in connection with the testimony introduced, was shown to be usurious and found to be so by the jury; that the court erred in refusing to render judgment in their favor on the findings returned by the jury, and that the court further erred in rendering judgment against them non obstante veredicto. Appellants base their contention that the transaction was usurious as a matter of the legal construction of the several instruments involved, on the terms thereof authorizing acceleration, and on the terms of that provision embraced in the first or principal deed of trust requiring them, in event of the imposition of any tax or assessment upon the principal notes or lien or interest of the holder of the secured indebtedness in the encumbered land, to pay the same, as will be hereinafter more fully recited. The acceleration clauses incorporated in the instruments evidencing this transaction are not materially different from the acceleration clauses considered and held not to disclose an intent to exact or receive usurious interest in various recent cases decided by our Supreme Court and by Courts of Civil Appeals, in which latter cases applications for writs of error have been refused or dismissed, and such contention is therefore overruled.

Appellants' contention that the transaction was rendered usurious by the terms of the tax provision hereinbefore referred to invokes more extended examination. A succinct recapitulation of the material facts is deemed proper. Appellants, who executed said several notes and deeds of trust, resided in Bosque county, and the land described in the respective deeds of trust was situated therein. The Realty Trust Company, the payee in all said notes and the beneficiary in said deeds of trust securing the same, was a domestic corporation, domiciled in the city of Dallas, Dallas county, Tex. F. O. Ketcham, the trustee named in said deed of trust, also resided in Dallas county. The transaction was consummated on December 8, 1922. The principal notes, or so-called "bonds," provided for the payment of interest thereon at the rate of 6 per cent. per annum, as evidenced by so-called interest notes or coupons. The additional interest notes, as before described, amounted to approximately 2 per cent. on the principal, but covered only one-half, or the first five years, of the period for which the loan was made. Specifically stated, the transaction required that appellants, during the first five years of the loan, pay interest annually at the rate of approximately 8 per cent. per annum and during the remaining five years of the period of the loan to pay interest at the rate of only 6 per cent. per annum. The original or principal deed of trust contained the following provision: "It is specially agreed, that if any tax or assessment shall be imposed within the State of Texas upon said Bond, or upon the interest of the said Trustee or his successors, or of any holder of said Bond, in said premises, or upon the lien of this instrument, or said lien or interest shall be declared to be real estate, and shall as such or otherwise be so taxed or assessed, while said Bond or lien is the property of a nonresident of the State of Texas, then the grantor, heirs, legal representatives or assigns shall at once discharge said tax or assessment and neither the said holder of said Bond or said Trustee nor his successors shall be liable therefor." Under our present tax laws, in assessing the value of land for taxation no discrimination is made with reference to whether the particular tract of land to be valued is encumbered or free from any such burden. Revised Statutes, arts. 7146 and 7147. A different rule prevails in some of the states. In such states laws have been enacted declaring that for the purpose of assessment for taxation a valid lien on real estate shall be held to constitute an interest therein, and that the assessed value of such real estate shall be apportioned between the owner of the legal title and the owner or holder of such lien. Stuart v. Durland, 115 Neb. 211,

212 N.W. 31, et seq, par. 1, 53 A.L.R. 739. No such law has been enacted in this state. We may therefore construe said excerpt as though it applied solely to the assessment of said principal notes or bonds as personal property under said article 7147 of our Revised Statutes. Appellee insists that said excerpt is by its terms applicable only while said principal notes are held by a nonresident of the state of Texas, and we are, after careful consideration of the same, constrained to accept such construction. Nevertheless, the possibility of the transfer of said principal notes by the Realty Trust Company to some nonresident of its own selection is necessarily indicated. The fact that promissory notes may be owned by a nonresident does not necessarily negative the possibility that said notes may be or become taxable in this state. Such nonresident owner may at his own election place the same in this state or allow them to remain therein under circumstances and for such purposes as to confer upon them a local taxable situs sufficient to support a levy of state, county, and municipal taxes thereon. Great Southern Life Ins. Co. v. City of Austin, 112 Tex. 1, 11, 12, 243 S.W. 778, 781, pars. 12 and 13, and authorities there cited; Hall v. Miller, 102 Tex. 289, 115 S.W. 1168. The issue as to the presence of the vice of usury in a contract must, absent subsequent modification, be determined as of the date thereof. Norris v. W. C. Belcher Land Mtg. Co., 98 Tex. 176, 181, 182, 82 S.W. 500, 83 S.W. 799; Green v. Grant, 134 Mich. 462, 96 N. W. 583, 585 (2d column). While additional payments or benefits dependent upon a contingency under the control of the debtor are not to be considered in determining such issue, further payments or benefits dependent upon a contingency under the control of the creditor are to be considered, regardless of whether such contingency afterwards actually occurred or not. 66 C.J., p. 201, §§ 116 and 117, and authorities cited in notes; Shropshire v. Commerce Farm Credit Co., 120 Tex. 400, 30 S.W.(2d) 282, 39 S.W.(2d) 11, 13, 14, pars. 5 and 6, 84 A.L.R. 1269; Commerce Trust Co. v. Best, 124 Tex. 583, 80 S.W.(2d) 942, 945, pars. 1 to 3, inclusive; Manning v. Christian, 124 Tex. 517, 81 S.W.(2d) 54, 56, par. 1; Hamilton v. Bill (Tex.Civ.App.) 90 S.W.(2d) 929, 933, par. 3, and authorities there cited. So it is held by the great weight of authority that when a contract provides absolutely for the repayment of money with interest thereon at the full legal rate and for additional interest or further return to the creditor upon a contingency, the contract is usurious if such contingency is not under the control of the debtor, even the possibility of the creditor's receiving excessive interest being more than he is entitled to require. 66 C.J., p. 200, § 114, and authorities cited in note 30. When, however, the interest absolutely payable is, as in this case, less than the statutory maximum, a provision requiring the payment of further sums upon a contingency not under the debtor's control does not necessarily render the contract usurious. In such cases it must further appear affirmatively that the parties, when they contracted, contemplated that in one or more years of the duration of the loan the interest agreed upon, together with such sum or sums as might become payable on the stipulated contingency, would amount in the aggregate to more than 10 per cent. of the principal unpaid at that time, and that the creditor intended that the debtor should nevertheless pay the same. Norris v. W. C. Belcher Land Mortgage Co., 98 Tex. 176, 181, 182, 82 S. W. 500, 502, 503, 83 S.W. 799; Aetna Life Ins. Co. v. Foster (Tex.Civ.App.) 66 S. W.(2d) 428, 431; par. 3; Union Trust Co. v. Radford, 176 Mich. 50, 141 N.W. 1091, pars. 1 and 2; Vandervelde v. Wilson, 176 Mich. 185, 142 N.W. 553, 554, par. 1; Quesner v. Novotny, 116 Neb. 84, 215 N. W. 796, 798, par. 3; 66 C.J., p. 233, §. 171; Id., pp. 200, 201, § 114.

The transaction under consideration was between appellants and the Realty Trust Company of Dallas, Tex. All the notes involved therein were made payable in that city. Just when said Trust Company transferred the principal notes to appellee is not shown. After such transfer it continued for a time at least to service the loan by collecting interest coupons as they became due and forwarding the proceeds to appellee. Whether it retained possession of the principal notes for such purpose as the agent or representative of appellee is not shown. Since appellee, as a nonresident owner of the principal notes, could at its own election have so placed or allowed the same to remain in the city of Dallas as to confer upon them a taxable situs there, and did, for a time at least, permit the Realty Trust Company to there service the same,

we do not think that appellee can reasonably complain that appellants sought to show the extent of the tax burden required of them by the excerpt under consideration by proving the basis of assessment and the respective rates of levy for state, county, and municipal purposes in said city. Appellants will have an opportunity upon another trial to introduce further testimony showing the basis of assessment and respective rates for the year in which the contract was actually made and for the years immediately preceding the same, in the light of which facts the parties may be reasonably presumed to have entered into said contract. Appellants were, by the excerpt under consideration, unequivocally required, in event any tax was assessed against said notes, to discharge the same. Whether said provision rendered the transaction usurious depends, under the authorities hereinbefore cited, on whether the parties thereto contemplated at the time that during one or more years the interest expressly reserved and the taxes on the notes which might become payable on the contingency stated would amount to more than 10 per cent. on the unpaid principal.

The court was not, under the evidence before it, authorized to instruct a verdict for appellee, and therefore, having submitted the case to the jury, could not set aside the verdict, make contrary findings of its own, and render judgment thereon. Revised Statutes, art. 2211, as amended, Acts 1931, 42d Leg., p. 119, c. 77, § 1 (Vernon's Ann.Civ.St. art. 2211); Amarillo Transfer & Storage Co. v. De Shong (Tex.Civ.App.) 82 S.W.(2d) 381, 385, par. 1; St. Louis, B. & M. Ry. Co. v. Little (Tex.Civ.App.) 81 S.W.(2d) 122, 123, par. 1; Freeman v. Schwenker (Tex. Civ.App.) 73 S.W.(2d) 609, pars. 7 and 8; 25 Tex.Jur., p. 502 (top of page).

We have given appellee's insistence that any purpose to exact usurious interest and any right to demand or receive payments or benefits (including the payment of any tax levied on the notes secured by the first deed of trust) which might otherwise render the transaction usurious, are conclusively negatived by certain provisions contained in the second deed of trust given by appellants to secure the five additional interest notes, careful consideration. Said provisions, with sufficient of the context to enable the same to be fully understood, are as follows:

"This instrument is in trust to secure the Realty Trust Company * * * in the payment of five notes, hereinafter called 'Note' * * *

"It is understood that the above described indebtedness is a part of the consideration for a loan made to the grantor herein by the grantee herein, as evidenced by a first deed of trust * * *

"Now, if said indebtedness * * * shall be paid when due * * * these presents * * * shall be * * * released * * * But if default shall be made in the payment of any of said indebtedness, or any of said notes * * * the trustee shall, at the request of the holder of any past due and unpaid note * * * sell the property hereby conveyed, subject to the lien of said first deed of trust and subject also to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured * * * Or, if the amount of interest paid and accrued on said first deed of trust bond, plus the amount of said Note, shall not aggregate more than ten per centum per annum on said bond for the time it shall have run, at the option of the legal owner and holder of said Note, the whole amount thereof shall at once become due and payable, and the trustee may sell said premises * * * subject, however, to the lien of said first deed of trust and to the lien of this instrument for unmatured notes or installments of the indebtedness hereby secured, and shall receive the proceeds of sale, which he shall pay and disburse as follows, to-wit: First, he shall pay all charges, costs and expenses of executing this trust * * * Second, he shall pay such portion of the debt and other sums hereby secured as shall have become due and payable at the time of instituting such proceedings, with interest in such priority as the trustee shall determine; and Third, the balance, if any, he shall render unto grantor on reasonable request." (Italics ours.)

We do not think an extensive or argumentative analysis of the foregoing excerpt is necessary to demonstrate that its provisions have no application to the obligation assumed by appellants in the first deed of trust to pay taxes on the principal notes and that they do not constitute any limitation on the amount which appellants

would be required to pay in discharge of such obligation. In said excerpt the notes secured by said deed of trust are sometimes referred to as such, but all the same in the aggregate are also called "note." It must be determined from the context in each instance when the word "note" is used whether such term applies to one separate note or whether it applies to all of them, or all of them remaining unpaid at the time, in the aggregate. By the terms of such excerpt, upon default in any required payment *the holder of any past-due and unpaid note* could request the trustee to sell the property, but it was expressly stipulated that such sale should be subject to the lien of the first deed of trust and subject also to the lien of said second deed of trust for unmatured notes or installments of the indebtedness secured thereby. By the further terms thereof, in the event the amount of interest paid and accrued on said first deed of trust bond, plus the amount of said note (notes), *should not aggregate more than 10 per cent. on said principal bond for the time it had run,* at the option of the legal owner and holder of said note (notes) the whole amount thereof should at once become due and payable. While the trustee was, under such circumstances, required to sell the premises, he was further required to sell the same subject to the lien of the first deed of trust, and, in apparent contradiction, subject also to the lien of said second deed of trust for unmatured notes or installments of the indebtedness secured thereby. The provision in said excerpt for application of the proceeds of any sale made by the trustee was made applicable to either method of sale so authorized. We therefore conclude that the provision relied on by appellee constitutes a mere limitation on the right of the holder of the second lien notes to accelerate the maturity thereof. The rule announced by our Supreme Court in Reynolds Mortgage Co. v. Thomas, 124 Tex. 570, 81 S.W.(2d) 52; Walker v. Temple Trust Co., 124 Tex. 575, 80 S.W.(2d) 935; and followed in Wellfare v. Realty Trust Co. (Tex.Civ.App.) 85 S.W.(2d) 1067 (writ refused), and Temple Trust Co. v. Stubbs (Tex.Civ.App.) 85 S.W.(2d) 817, that where a deed of trust requiring the debtor to pay taxes on the note evidencing his indebtedness contains an express stipulation that the same shall not be construed to require him to pay interest on such note at a greater rate than 10 per cent. per annum, such limitation negatives any intent to collect an unlawful rate of interest and relieves the transaction of any taint of usury, has, therefore, no application.

The judgment of the trial court is reversed, and the cause remanded.